<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>HASSAN HARRIS,<br><br>                    Defendant. | Case No. 2:20-cr-00679 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Hassan Harris's ("Defendant") Motion to Suppress. (ECF No. 65). Plaintiff, the United States of America (the "Government") filed an Opposition. (ECF Nos. 67). Having reviewed the parties' submissions filed in connection with the Motion and having held oral argument on June 13, 2023, for the reasons set forth below and for good cause having been shown, Defendant's Motion to Suppress (ECF No. 65) is **DENIED**.

**I.      BACKGROUND**

On June 23, 2020, Officers Ryan O'Grady and Ryan Killimett (collectively, the "Officers") of the Union Township Police Department initiated the stop of a black Ford Taurus after noticing the vehicle was "heavily tinted." (ECF No. 56 (Hearing Tr. 2) at 37:14–25.) A search of the license plate revealed the registered owner's license and registration was suspended. (*Id.*) The Officers continued to follow the vehicle, which was traveling around fifty miles per hour in a thirty-five-mile-per-hour zone. (*Id.*) They activated their overhead lights, notified dispatch, and followed the

vehicle for less than half of a mile until the vehicle pulled over on Springfield Avenue. (*Id.* at 38:1–14; 67:3–8.)

Once the vehicle was stopped on the shoulder, Officer O'Grady approached the driver side of the car. (*Id.* at 40:15–18.) Defendant opened the driver-side door because the window was not working at the time. (*Id.*) Officer O'Grady testified, at that time, he observed the smell of raw marijuana, but did not alert the driver so as not to alarm him. (*Id.* at 40:19–41:6.) Officer Killimett agreed that, while speaking with Defendant, he smelled raw marijuana emanating from Defendant's car and person. (*Id.* at 94:17–24.) Defendant "fumbl[ed] around" for his documentation, including in the backseat of the car, until Officer O'Grady asked him to exit the vehicle, out of a concern for the Officers' safety. (*Id.* 41:7–18.) His safety concerns included the vehicle's location in the narrow shoulder and his position in the "middle of the road." (*Id.* 41:19–24.) They re-positioned to the rear of Defendant's vehicle, between his car and the patrol car. (*Id.* at 42:4–7.)

Again, Officer O'Grady reported smelling marijuana near the trunk of Defendant's vehicle. (*Id.* at 42:8–14.) Officer O'Grady informed Defendant that he smelled marijuana and asked him about its origin. (*Id.* at 42:16.) Defendant responded that he had "just finished smoking" marijuana. (*Id.* at 42:17–21; 109:10–15.) Officer O'Grady mentioned the smell two or three more times. (*Id.* at 42:25–43:10.) Officer Killimett similarly reported smelling marijuana and noted a leafy, green residue on Defendant's shirt and pants. (*Id.* at 97:4–18.) The Officers explained to Defendant why they were proceeding with a search of Defendant's car and person, and Defendant appeared to

understand. (*Id.* at 43:11–18.) Officer Killimett "phon[ed] in a PC search," meaning he notified his supervisor the Officers planned to conduct a probable cause search. (*Id.* at 77:6–78:13.)

During the search of the car, the Officers found 110 wax heroin folds containing fentanyl[1] in the back seat of the interior of the vehicle, and a fanny pack with a loaded handgun with a defaced serial number on the rear passenger seat. (*Id.* at 44:1–4.) During a search of the trunk, the Officers recovered 0.634 grams of raw marijuana in a sealed bag in the trunk. (*Id.* at 44:7–10; ECF No. 55 (Hearing Tr. 1) at 30:2–5.) On August 5, 2020, a federal grand jury returned a three-count Indictment, charging Defendant with: Possession of a Firearm by a Convicted Felon (Count One); Possession with Intent to Distribute Heroin and Fentanyl (Count Two); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count Three). (ECF No. 1.)

On October 15, 2021, Defendant filed an Omnibus Motion, which included a motion requesting that evidence obtained during a search of Defendant's vehicle be suppressed, or alternatively, that an evidentiary hearing be scheduled. (ECF No. 29 at 6–10.) The Government filed an Opposition on November 12, 2021, arguing, in part, that Defendant's request for suppression was baseless. (ECF No. 32.) On December 7, 2021, Defendant filed a Reply, reaffirming that an evidentiary suppression hearing was necessary. (ECF No. 35.)

The Court held a Frye and Evidentiary hearing on February 1 and February 17, 2023. (ECF Nos. 52, 54.) Defendant called David Leff ("Leff") as an expert[2] on the issue of the detection of the odor of marijuana, both in raw and burnt form, and the effect of different containers on the emanation of the odor. (Hearing Tr. 1 at 13:17–20.) Leff explained, in this case, Defendant was stopped on the side of a heavily-traveled, four-lane highway, and was questioned by the Officers

---

[1] Officer O'Grady defined a fold of heroin as a "single use of heroin." (Hearing Tr. 2 at 44:5–6.)

[2] The Court qualified Leff as an expert pursuant to Federal Rule of Evidence 702.

while his car was still on and emanating exhaust. (*Id.* at 31:15–21.) Leff noted, from his review of the body camera footage, that the Officers expressed, ad nauseam, they smelled marijuana coming from the vehicle. (*Id.* at 31:21–32:1.) Eventually, Defendant responded to the Officers that he had been smoking. (*Id.* at 45:19.)

Leff explained, in the report, the Officers noted they smelled a strong odor of "raw marijuana from the interior of the vehicle." (*Id.* at 35:4–11.) Ultimately, the amount recovered was "a very small amount," a little more than a half of a gram. (*Id.* at 32:22–25.) It was in a smell-proof, mylar packet, rolled up in a jacket pocket inside of the trunk. (*Id.* at 33:1–4; 33:16–20.) Leff testified there was no likelihood that a smell of raw marijuana emanated at all from the smell-proof bag. (*Id.* at 33:24–34:2.) In his opinion, "based on a totality of the circumstances and to a reasonable degree of professional certainty, there was no odor" of raw marijuana detected in the cab of the car. (*Id.* at 42:8–12.) He did concede, however, it was possible the Officers could have smelled burnt marijuana from where he was positioned, (*id.* at 44:20–21), which, at least at some point, was "in close range" about "two feet" away from the vehicle, (*id.* at 45:5–10). However, there was no evidence of burnt marijuana, paraphernalia, or smoking material in the ashtray of the car, either in the body cam footage or logged in the property receipt. (*Id.* at 49:11–18.)

Both Officers testified as fact witnesses at the hearings.[3] Officer O'Grady conceded that, in his report, he only noted he smelled raw marijuana or the odor of marijuana, generally, and did not mention burnt marijuana. (Hearing Tr. 2 at 54:3–11.) However, in his training and experience, the smell of either raw or burnt marijuana can provide the basis for a search. (*Id.* at 47:1–10.) He testified both raw and burnt marijuana omit a pungent smell, which may remain in the air or on

---

[3] Lieutenant Robert Donnelly also testified as to the authenticity of certain records relating to previous traffic stops by Officers O'Grady and Killimett. (*See* Hearing Tr. 2.) Maureen Camacho, a paralegal with the defense, testified as a summary witness regarding those reports. (*Id.*)

clothing and other items after it is removed from an area. (*Id.* at 47:18–48:16.) Officer O'Grady testified if both raw and burnt marijuana are in the same location, it may be difficult to determine which odor he is detecting, but he would be able to identify there was a smell of marijuana generally in the air. (*Id.* at 48:17–24.) Officer Killimett agreed, adding that raw marijuana can linger even longer than burnt marijuana. (*Id.* at 106:20–107:9.)

Following the hearings, on May 15, 2023, Defendant filed a Post-Hearing Brief in Support of Suppression. (ECF No. 65.) The Government filed a Response. (ECF No. 67.) Oral argument regarding Defendant's Motion to Suppress was held on June 13, 2023. (ECF No. 69.) Defendant filed a Supplemental Letter on June 14, 2023, clarifying some of the defense's positions that he mistakenly misrepresented at oral argument. (ECF No. 70.) This included that he erred in representing the "stop was appropriate" and the legality thereof should be conceded. (*Id.*)

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 41(h) provides "[a] defendant may move to suppress evidence in the court where trial will occur, as Rule 12 provides." Fed. R. Crim. Pro. 41(h). Rule 12 requires suppression motions be made prior to trial. Fed. R. Crim. P. 12 (b)(3)(C).

The Supreme Court "created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231 (2011). "The Fourth Amendment forbids 'unreasonable searches and seizures,' and this usually requires the police to have probable cause or a warrant before making an arrest." *Herring v. United States*, 555 U.S. 135, 136 (2009). However, a traffic stop of a vehicle requires only reasonable suspicion of criminal activity, rather than probable cause. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (citing *Terry v. Ohio*, 392 U.S. 1, 29 (1968)). A policeman who lacks probable cause, "but whose 'observations lead him reasonably to suspect'

that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" *Id.* The test for reasonable suspicion is an objective one—"as a general matter, the decision to stop an automobile is reasonable where . . . a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) (explaining police officers may perform investigatory traffic stops based on reasonable suspicion that an individual has violated a traffic law). Where a stop is not supported by reasonable suspicion, any evidence obtained as a result must be suppressed, absent some other exception. *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

Unless the investigation provides the officer with probable cause for further search of the detainee's person or vehicle, or probable cause for arrest, the detainee must be released. *Berkemer*, 468 U.S. at 439–40. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The "automobile exception" to the warrant requirement of the Fourth Amendment "permits vehicle searches without a warrant if there is 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014); *see also United States v. Matthews*, 597 F. Supp. 3d 694, 703 (D.N.J. 2022) ("Where an officer has probable cause to believe an automobile contains evidence of an offence, the so-called 'automobile exception' permits a warrantless search of the vehicle."). "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" *United States v. Lackey*, No. 20-2977, 2022 WL 313807, *2 (3d Cir. Feb. 2, 2022) (quoting *Donahue*, 764 F.3d at 301).

Generally, "[t]he proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated." *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). However, "[i]n the case of a warrantless search, the government bears the burden to show that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted).

## III.   DECISION

Defendant argues the evidence recovered during the Officers' search of Defendant's vehicle should be suppressed because: (1) Defendant's admission to smoking marijuana cannot be used to justify the Officers' finding of probable cause because Officer O'Grady testified he had probable cause to search when he observed a "heavy smell of raw marijuana" as Defendant opened his car door, and Defendant was effectively under arrest immediately after, when the Officers asked Defendant to exit his vehicle; (2) the statistics presented to the Court demonstrate the Officers' history of making false claims of the "smell of marijuana" to justify searches; and (3) the credibility of the Officers is impacted by a series of significant material errors in the Police Report, including false allegations of speeding, false allegations of Defendant ignoring police lights and sirens, conflicting testimony about the Officers' choosing of a target, and an incessant repetition on tape regarding the smell of marijuana. (ECF No. 65.)

The Government submits Defendant's Motion should be denied because the search of the vehicle was proper under the automobile exception to the Fourth Amendment's warrant requirement. (ECF No. 67.) Specifically, the Government explains both Officers detected the smell of marijuana emanating from the vehicle, which was then corroborated by Defendant's admission he "just got finished smoking," thereby nullifying the defense's "false smell of marijuana syndrome" argument. (*Id.* at 3–4.) Further, the defense's expert admitted the circumstances under

7

which the Officers interacted with Defendant during the stop would have allowed the Officers to detect the smell of burnt marijuana, which can easily be mistaken for raw marijuana, and similarly provide a basis for probable cause. (*Id.* at 4.) Accordingly, the Government asks the Court to deny Defendant's Motion.

### A. Officer Credibility

As an initial matter, the Court finds the Officers to be credible. In deciding a motion to suppress evidence, a trial court must determine the credibility of witnesses. *United States v. Howard*, 787 F.Supp.2d 330, 331 (D.N.J. 2011) (citing *United States v. Davis*, 514 F.3d 1085, 1088 (7th Cir. 1975)). "As the finder of fact, the court can accept or reject any or all of a witness's testimony." *Id.* at 332 (citations omitted). In determining credibility, the court should consider: the witness's demeanor and manner on the stand; the witness's ability to accurately recollect the matters at hand; and the extent to which the testimony withstands a common-sense test of reason and logic. *Id.*

First, contrary to Defendant's assertion, the record does not reflect the Officers made any false allegations of speeding in the report by noting Defendant was traveling at fifty miles per hour in a thirty-five-mile-per-hour zone. The defense contends "simple mathematics" reveals Defendant was traveling "well under" the speed limit because Defendant would have been able to travel the .3 or .4 miles from the gas station to the stopping point in twenty-two to twenty-nine seconds traveling at fifty miles per hour, which would not allow for the Officers to turn on their equipment, catch up to the vehicle, and enter the license plate information. (ECF No. 65 at 7–9.) However, Defendant's calculations are based almost entirely on *estimations* provided by the Officers during

their testimony.[4] Defendant's reasoning also assumes Defendant was traveling at fifty miles per hour for the entire distance, which was never alleged. Even so, Defendant's conclusion that the vehicles traveled for at least fifty-six seconds, when it takes twenty-nine seconds to travel .4 miles at fifty miles per hour, under the circumstances, does not discredit the Officers' testimony that Defendant was speeding at some point during their pursuit.[5]

Further, the Court finds the Officers' testimony regarding the police sirens and post-arrest dialogue both insignificant and irrelevant to this matter. The defense contends Defendant "did not delay in pulling over," so any report to the contrary is "manipulative." (ECF No. 65 at 9–10.) However, the defense also admits that the tape reflects Defendant failed to pull over for twenty-four seconds after the Officers put on their lights and sirens. (*Id.* at 9.) While twenty-four seconds is not a substantial duration of time, the Officers' report of the "delay" was proportionally relevant to this case. The Officers merely noted in their report that Defendant "continued to travel south

---

[4] Officer O'Grady testified the distance from the intersection at Springfield and Valley to Springfield and Vauxhall was "[a]pproximately .3 miles," which he qualifies as "an estimated guess." (Hearing Tr. 2 at 66:25–67:4.) He later estimated the distance was about .3 or .4 miles, but again, called it an "educated estimate." (*Id.* at 68:10–18.) He did not know the exact amount of time that elapsed during the pursuit. (*Id.* at 69:2–7.) Officer Killimett testified it took "tens of seconds" for the Officers to catch up to the car, which meant not five and not ten, but he "couldn't tell you how long it took." (*Id.* at 100:19–25.)

[5] While the defense conceded at oral argument the traffic stop was proper, Defendant submitted a subsequent letter to the Court withdrawing that position the following day. (ECF No. 70.) Defendant argues in the letter that the Officers' conversation subsequent to the stop demonstrated their intent to target and follow Defendant "for no identifiable legal reason having to do with any violation of the law" but for racial reasons. (*Id.*) As explained herein, the Court does not believe the Officers fabricated their reports of Defendant's speeding, but nonetheless, the constitutional reasonableness of the stop is separate and apart from the motivations of the officers involved. *See Whren*, 517 U.S. at 813. And, even if Defendant was not speeding, the Officers had a valid basis for conducting a traffic stop based on Defendant's tinted windows and suspended license and registration. *See Delfin-Colina*, 464 F.3d at 397 (finding police officers may perform investigatory traffic stops based on a reasonable suspicion that an individual has violated traffic laws); *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (finding reasonable suspicion existed where a vehicle was speeding and had an improperly tinted windshield.)

before stopping." Further, Officer O'Grady simply questioned Defendant about why it took him "a little bit" to pull over. Neither situation where the "delay" was addressed by the Officers rose to a level of "manipulation," and therefore, do not impact the Officers' credibility. *See Whren*, 517 U.S. at 813 ("[The] cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.") Similarly, Officer O'Grady's inability to recall the post-arrest conversation between himself and Officer Killimett, which took place over two years prior, does not discredit his testimony at the hearing. The conversation was relatively inconsequential; it took place post-stop, post-search, and post-arrest. Officer O'Grady's inability to remember what he said or meant at the time is not indicative of any nefarious intention, especially given his overall credible demeanor on the stand.

Lastly, Defendant claims the Officers' repeated mention of a strong smell of marijuana during the traffic stop was self-serving and designed to persuade any reviewer of the body camera footage that it was true, when the Officers' smelling of raw marijuana under the circumstances was "unlikely." (ECF No. 65 at 11–12.) The Court takes no issue with the Officers' repeated mention of the smell of marijuana, and while the Officers may or may not have smelled the approximately half of a gram of raw marijuana in the trunk, it is possible they detected the odor of lingering marijuana, either raw (Hearing Tr. 2 at 48:17–24; 106:20–107:9), or burnt (*id.* at 44:20–21; 45:5–10), which are nearly indistinguishable (*Id.* at 48:17–24; 106:20–107:9). Repeated recitation of these observations is not a basis for discrediting the Officers' testimony.

Overall, the Officers demonstrated consistency in their respective testimonies and the report of search and arrest, a candid manner, and a recollection of the incident that is reasonable and logical. *See Howard*, 787 F. Supp. 2d at 332. The Officers' testimony was coherent, facially plausible, and internally consistent with the evidence in the record. *United States v. Frisby*, 474 F.

App'x 865, 867 (3d Cir. 2012). Accordingly, the Court finds the Officers' testimony credible.[6] *See Howard*, 787 F. Supp. 2d at 332.

### B.  The Officers' Purported History of False Smell of Marijuana Syndrome

Defendant attempts to introduce an extremely narrow subset of statistics purportedly representing the Officers' use of the "false smell of marijuana" to justify searches in other cases. (ECF No. 65 at 5–7.) Specifically, Defendant claims in twenty-three of thirty cases where the Officers reported they claimed to smell marijuana, no evidence was found to support the claim. (*Id.*) Defendants further allege in the seven remaining cases where marijuana was actually found, the marijuana was found in a smell-proof container. (*Id.*) However, the statistics presented by Defendant fail to account for the hundreds of other traffic stops in which the Officers were involved that did not result in an incident report at all, or one authored by either Officer O'Grady or Officer Killimett. Further, in seventeen out of the twenty-three cases where no marijuana was found during the stop, there was some other evidence corroborating the smell, including the driver's own admissions. (Hearing Tr. 2 at 25:4–25.) Thus, the Court declines to give weight to the small percentage of reports presented by the defense for the purpose of establishing a pattern of false smell of marijuana syndrome.

### C.  The Admissibility of Evidence

Defendant argues his statement to the Officers that he "just finished smoking" cannot be used to justify the Officers' finding of probable cause to search his vehicle, because the statement was made after Officer O'Grady admitted to already having probable cause to search, and after

---

[6] The Court observed the Officers' demeanor on the stand. (*See* Hearing Tr. 2.) Both were calm, responsive, and maintained eye contact with counsel. The Court found no indicia, in their body language, tone, or otherwise, that the Officers were anything but forthright and honest when providing their testimony.

Defendant was effectively "seized." (ECF No. 65 at 1–5.) Therefore, Defendant submits the Court can only consider Officer O'Grady's claim that he smelled raw marijuana when Defendant opened the car door as a basis for the subsequent search, which Defendant alleges was impossible and entirely false. (*Id.*)

The Government disagrees, arguing the search of Defendant's vehicle was proper under the automobile exception to the Fourth Amendment's warrant requirement. (ECF No. 67 at 3.) Specifically, the Government submits both Officers observed the smell of marijuana emanating from Defendant's vehicle, which Defendant corroborated by admitting to smoking. (*Id.* at 4.) While Defendant attempts to distinguish between Officer O'Grady's observation of raw marijuana, and the smell of burnt marijuana, the Government contends the distinction is immaterial, as either could be a basis for probable cause at the time of the search. (*Id.*) Regardless of whether the Court considers Defendant's admission to smoking as support for the Officers' probable cause determination, the Government asks the Court to consider it for the purpose of corroborating the Officers' credibility. (*Id.*) The Government notes even Defendant's expert agrees that marijuana has a tendency of lingering, and it is reasonably possible Officer O'Grady smelled burnt marijuana during the car stop. (*Id.*) Accordingly, the Government asks the Court to deny Defendant's motion. (*Id.*)

The Fourth Amendment prohibits unreasonable searches and seizures, which generally includes warrantless searches. *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). However, "[t]he automobile exception permits vehicle searches without a warrant if there is 'probable cause to believe that the vehicle contains evidence of a crime.'" *Donahue*, 764 F.3d at 299–300; *see also Matthews*, 597 F. Supp. 3d at 703 ("Where an officer has probable cause to believe an automobile contains evidence of an offence, the so-called 'automobile exception' permits a warrantless search

of the vehicle."). Where probable cause justifies a search, "it justifies a search of every part of the vehicle and its contents that may conceal the object of the search." *Donahue*, 764 F.3d at 300 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)); *see also United States v. Byrd*, 813 F. App'x 67, 61 (3d Cir. 2020) (holding a driver's admission he possessed a "blunt" in the center console of his car justified a search of the passenger compartment and closed trunk of the vehicle).

"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" *Lackey*, 2022 WL 313807, at \*2 (quoting *Donahue*, 764 F.3d at 301). The government bears the burden of establishing the applicability of the exception by a preponderance of the evidence. *Id.* The smell of marijuana, alone, may establish probable cause if the officer localizes its source with "sufficient particularity." *Ramos*, 443 F.3d at 308; *see also Lackey*, 2022 WL 313807, at \*2 ("Both [officers] smelled the odor of raw marijuana emanating from the [car], and that alone gave them the necessary probable cause to conduct a search of the vehicle."); *United States v. Ushery*, 400 F. App'x 674, 675–76 (3d Cir. 2010) ("Given . . . that [the officers], who both encountered marijuana on the job on numerous occasions, smelled burnt marijuana coming from [the defendant's] car, the police had probable cause to search the car."); *United States v. Wimbush*, No. 19-134, 2020 WL 1873020, \*16 (D.N.J. Apr. 15, 2020) ("[T]he officers had probable cause to investigate potential narcotics possession once they smelled the odor of marijuana emanating from the vehicle.").

The Court agrees with the Government that the seizure and search of Defendant's automobile was appropriate, and the evidence resulting therefrom is admissible. The Officers' traffic stop of Defendant's vehicle was proper, because it resulted from traffic violations giving rise to reasonable suspicion for the seizure. *See Delfin-Colina*, 464 F.3d at 397; *Sullivan*, 532 U.S. at 771. The subsequent search of Defendant and his automobile was also permissible, because the

Officers' had probable cause to search when they localized the source of the smell of marijuana with sufficient particularity to establish probable cause. *See Lackey*, 2022 WL 313807, at *2; *Ushery*, 400 F. App'x at 676. While Defendant argues the Officers could not have smelled the raw marijuana—later found in a sealed bag, in a jacket pocket, in Defendant's trunk—the Court is satisfied by the evidence and testimony in the record that the Officers could have plausibly smelled lingering raw marijuana or burnt marijuana, both of which are sufficient to establish probable cause for a search. *See Ushery*, 400 F. App'x at 675–76; *Lackey*, 2022 WL 313807, at *2; *Wimbush*, 2020 WL 1873020, at *16 (finding a search was justified where a car was stopped for tinted windows before the officers smelled marijuana).

The Officers testified the smell of marijuana can remain in the area, or linger on clothing or other items, after marijuana is removed from the area, before or after it has been smoked. (Hearing Tr. 2 at 47:18–48:16; 105:8–106:2.) It can also be difficult to detect whether a smell is of raw or burnt marijuana if both smells are in the same location, but regardless, the smell of marijuana is still present. (*Id.* at 48:17–24; 106:3–9.) Even Defendant's expert conceded it was possible the Officers could have smelled burnt marijuana in their proximity to the vehicle. (*Id.* at 44:20–21). Therefore, regardless of whether the Officers specifically observed raw or burnt marijuana, it was certainly reasonable the smell was emanating from the vehicle at the time the Officers noted same, giving them probable cause for the search.

The Court also agrees with the Government that Defendant is essentially asking the Court to suppress evidence based on an adverse credibility determination regarding the Officers' "false smell of marijuana," while simultaneously asking the Court to disregard Defendant's statement corroborating the smell. Defendant's statement that he "just finished smoking," was not necessary to establish probable cause for the search. However, this Court finds the statement relevant for the

14

purpose of corroborating that the smell of marijuana was reasonably present at the time of the stop, and therefore, not "false[ly]" perceived by the Officers. Because the Government sufficiently established the vehicle search was proper under the automobile exception to the warrant requirement, Defendant's Motion to Suppress the resulting evidence is denied.

**IV.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Suppress (ECF No. 65) is **DENIED.**

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  August 23, 2023