<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>HASSAN HARRIS,<br><br>                Defendant. | Case No. 2:20-cr-00679-BRM<br><br><br><br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Hassan Harris's ("Defendant") Motion to Dismiss Count I of the Indictment (ECF No. 1) for being unconstitutional on its face and as applied to Defendant (ECF No. 83). The United States of America ("Government") filed a response in opposition to the Motion on March 15, 2024. (ECF No. 84.) Defendant filed a reply in further support of the Motion on April 11, 2024 (ECF No. 86), and a supplemental letter on April 17, 2024 (ECF No. 87). The Government filed a supplemental response in opposition to the Motion on April 18, 2024. (ECF No. 88.) Having reviewed the parties' submissions filed in connection with the Motion and having held oral argument on April 18, 2024 (ECF No. 89), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss Count I of the Indictment is **DENIED**.

**I.    BACKGROUND**

    **A.    Factual Background**

For the purpose of this motion to dismiss, "the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

Defendant is charged with one count of "Possession of a Firearm by a Convicted Felon," under 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)") based on his possession of "a SCCY CPX-2 9 millimeter caliber handgun bearing a defaced serial number, loaded with ten (10) rounds of 9 millimeter caliber ammunition." (ECF No. 1 at 1.) Defendant is also charged with one count of "Possession with Intent to Distribute Heroin and Fentanyl" under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (*id.* at 2) and one count of "Possession of a Firearm in Furtherance of a Drug Trafficking Crime" under 18 U.S.C. § 924(c)(1)(A)(i) ("§ 924(c)(1)(A)(i)") (*id.* at 3). The charge arises from Defendant's stop by the Union Township Police Department on June 23, 2020. (ECF No. 84 at 1.) Prior to the stop, police officers saw a black Ford Taurus committing multiple traffic violations. (*Id.*) A records check revealed that both the vehicle's registration and the driver's license of the registered owner—Defendant—were suspended. (*Id.* at 1–2.) Upon approaching the vehicle, officers noticed the smell of marijuana coming from the vehicle. (*Id.* at 2.) When asked to produce his credentials, Defendant reached around the inside of the vehicle, including in the backseat. (*Id.*) An officer then ordered Defendant out of the vehicle. (*Id.*) Defendant complied, but attempted to lock the keys inside the vehicle while it was still running. (*Id.*) The officer questioned Defendant about the marijuana smell, to which Defendant admitted he had just smoked marijuana. (*Id.*) Defendant also denied there was any contraband in the vehicle. (*Id.*)

During the stop, police recovered:

> (1) a loaded SCCY Industries CPX2 9 millimeter handgun with a defaced serial number, which was inside a camouflage fanny pack in the backseat; (2) approximately 110 wax folds containing heroin and fentanyl, which were located inside a black plastic bag in the backseat; and (3) a plastic bag containing marijuana, which was located in the trunk.

(*Id.*)

### B. Procedural History

The Indictment was filed on August 5, 2020. (ECF No. 1.) Defendant was arraigned on September 14, 2020. (ECF No. 17.) On October 15, 2021, Defendant filed various pre-trial motions before the Court. (ECF No. 29.) On February 9, 2022, the Court issued an Order granting in part, and denying in part, Defendant's pre-trial motions. (ECF No. 43.) On May 15, 2023, Defendant filed a motion to suppress the evidence collected from the search of his car. (ECF No. 65.) On August 23, 2023, the Court issued an Opinion and Order denying Defendant's motion to suppress. (ECF Nos. 71, 72.) Defendant filed the present motion to dismiss Count I of the Indictment on February 16, 2024. (ECF No. 83.) The Government filed a response in opposition to the motion on March 15, 2024. (ECF No. 84.) Defendant filed a reply in further support of the motion on April 11, 2024 (ECF No. 86), and a supplemental letter on April 17, 2024 (ECF No. 87). The Government filed a supplemental response in opposition to the motion on April 18, 2024. (ECF No. 88.) The Court held oral argument on the motion on April 18, 2024. (ECF No. 89.) On May 16, 2024, the Court granted Defendant's motion to relieve his counsel and adjourned the previously scheduled trial date of June 17, 2024 pending the Court's appointment of new counsel. (ECF No. 93.)

### II. LEGAL STANDARD

A defendant may bring a motion to dismiss counts in the indictment under Federal Rule of Criminal Procedure 12. Fed. R Crim. P. 12(b)(1); *United States v. Boone*, No. 22-233, 2024 WL 965146, at *2 (D.N.J. Mar. 6, 2024).

When raising a facial constitutional challenge to a statute, the moving party must show the law "'could never be applied in a valid manner[,]' and as such, must be struck down in its entirety." *Boone*, 2024 WL 965146, at *2 (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*,

466 U.S. 789, 797–98 (1984)). "A [moving party] asserting a facial challenge 'seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.'" *Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723, 737 (E.D. Pa. 2015) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999)). Therefore, the moving party must meet the "particularly demanding" standard of showing there is "'no set of circumstances' that exists under which the statute at issue would be valid." *Green Party of Pa.*, 89 F. Supp. 3d at 737 (quoting *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014)).

An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Miller v. Sessions*, 356 F. Supp. 3d 472, 480 (E.D. Pa. 2019) (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)). In the Third Circuit, courts now engage in a two-step analysis of as-applied challenges using the Second Amendment. The Court will first decide whether the text of the Second Amendment "applies to a person and his proposed conduct." *Range v. Att'y Gen. United States of America*, 69 F.4th 96, 101 (3d Cir. 2023). Courts often divide this first step into two parts, evaluating first whether the Second Amendment applies to the person, and then whether the Second Amendment covers the conduct in question. *See United States v. Hedgepeth*, No. 22-377, 2023 WL 7167138, at *4 (E.D. Pa. Oct. 31, 2023) (separately evaluating the issue of whether the Second Amendment covered defendant as a person from the issue of whether the Second Amendment covered the conduct); *United States v. Jenkins*, No. 23-088, 2023 WL 6534200, at *16 (E.D. Pa. Oct. 6, 2023) (same); *United States v. Perez*, No. 22-55, 2024 WL 579115, at *2 (D. Del. Feb. 13, 2024) (same). If the moving party makes this showing, the Government must then "affirmatively prove that its firearms regulation is part of the historical

4

tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022)).

### III. DECISION

Defendant argues he is a person protected by the Second Amendment and was engaged in conduct covered by the amendment. (ECF No. 83 at 3–4.) Defendant claims the Third Circuit has found the Second Amendment protects all people regardless of their criminal histories, and claims he was engaged in axiomatic Second Amendment conduct by possessing a handgun and ammunition. (*Id.*) Defendant also asserts § 922(g)(1) is inconsistent with the nation's historical tradition of firearms regulation, as felon-disarmament laws did not appear in the United States until the 20th Century and are distinct from earlier forms of firearm regulation in that they constitute a lifetime disarmament of Defendant. (*Id.* at 4–6.)

The Government responds that many circuit courts of appeal have affirmed the constitutionality of felon-disarmament laws, and the Third Circuit decision is distinguishable from this case for dealing with crimes of much less severity. (ECF No. 84 at 3–5.) The Government alleges that Defendant did not possess a gun for a valid Second Amendment purpose, as the Second Amendment does not protect the possession of guns in connection with drug trafficking and does not presumptively protect possession of guns with defaced serial numbers, such as the one here. (*Id.* at 6–10.) The Government claims Defendant could meet his burden of showing a valid Second Amendment purpose for possessing the firearm by making a proffer of evidence under the exclusionary rule of *Simmons v. United States*, 390 U.S. 377 (1968), which would allow Defendant to show his purpose under the Second Amendment without having such evidence used against him in subsequent prosecution. (*Id.* at 7–8.)

On whether § 922(g)(1) is consistent with the nation's historical tradition of firearms regulation, the Government argues there are numerous historical analogues of governments disarming individuals deemed potentially dangerous to the community, including groups deemed untrustworthy, those who refused to swear oaths of allegiance to the state, and those who may have intended to use firearms in a dangerous or illegal manner. (*Id.* at 12–15.) The Government claims the Supreme Court in *Bruen* confirmed the Second Amendment was intended only to apply to "law-abiding" citizens, and permitted restrictions such as background checks to confirm that gun purchasers are "law-abiding" citizens. (*Id.* at 10–11.) The Government further argues the Third Circuit's decision in *Range* is a narrow holding, and that Defendant's circumstances, including the severity of his past crimes such as armed robbery, are substantially different from the non-violent fraud for which *Range* was convicted. (*Id.* at 15–18.) The Government also asserts Defendant's facial challenge to § 922(g)(1) should fail, as there are clearly circumstances where § 922(g)(1) would be constitutional, particularly for the most violent felonies such as first-degree murder, which historically were punishable by death. (*Id.* at 18–19.)

Defendant replies that he need not show he possessed a firearm for a lawful purpose, as he is presumed innocent of any charges or allegations related to his conduct and § 922(g)(1) would criminalize his possession of a firearm regardless of his intentions. (ECF No. 86 at 1–3.) Defendant argues the plain text of the Second Amendment protects his right to possess a firearm and ammunition and claims possessing a firearm with a defaced serial number is not *per se* excluded from Second Amendment protection. (*Id.* at 3–4.) Regarding whether § 922(g)(1) is consistent with the nation's historical tradition of firearms ownership, Defendant asserts § 922(g)(1) is distinct from previous restrictions on firearm ownership by dangerous individuals, as historical restrictions allowed such individuals to eventually recover their right to bear arms, whereas §

922(g)(1) is a categorical lifetime ban which provides no opportunity for a felon to regain firearm ownership. (*Id.* at 4–5.)

Defendant submitted an additional letter in support of his Motion, arguing that the case *United States v. Farrakhan Williams*, No. 23-690, 2024 WL 1604632 (D.N.J. Apr. 12, 2024) showed a defendant's purpose in possessing a firearm is not relevant to the conduct implicated in § 922(g)(1). (ECF No. 87 at 1.) The Government responded by noting the court found felon disarmament to be consistent with the nation's historical tradition of firearms regulation and arguing that court found it relevant to determine whether the Second Amendment covers an individual's conduct, with the court finding that possession of a firearm in the home satisfied this burden, a circumstance distinct from the instant case which involves possession of a firearm in a vehicle next to drugs. (ECF No. 88 at 1–2.)

### A.      Facial Challenge

Defendant's facial challenge to the constitutionality of § 922(g)(1) fails because courts have clearly found there are circumstances where the application of the statute is constitutional. For a facial challenge to succeed, the moving party must show the law "'could never be applied in a valid manner[,]' and as such, must be struck down in its entirety." *Boone*, 2024 WL 965146, at *2 (quoting *Members of City Council of L.A.*, 466 U.S. at 797–98). The Supreme Court has stated that the "the right secured by the Second Amendment is not unlimited," and has held that its opinion in *Heller* should not be taken "to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008). This language is "not dicta." *United States v. Barton*, 633 F.3d 168, 171 (3d Cir. 2011) (quoting *United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010)), *rev'd on other grounds*, *Binderup v. Att'y Gen. United States of America*, 836 F.3d 336 (2016). The Supreme Court's

decision in *Bruen* did not overturn this holding, rather, that decision was meant to build upon the Supreme Court's previous Second Amendment jurisprudence. *See United States v. Morales*, No. 22-161, 2023 WL 6276672, at *3 (M.D. Pa. Sept. 26, 2023) ("*Bruen* did not invalidate, alter, or overturn the legal principles and analysis set forth in *Heller* and *McDonald*."); *United States v. Canales*, No. 21-226, 2023 WL 8092078, at *8 (E.D. Pa. Nov. 20, 2023) (same) (quoting *Morales*, 2023 WL 6276672, at *3); *United States v. Winters*, No. 22-112, 2024 WL 579077, at *2 (D. Del. Feb. 13, 2024) (same) (quoting *Canales*, 2023 WL 8092078, at *8). To the extent the Third Circuit's opinion in *Range* overturned § 922(g)(1) as applied to the appellant, that decision was intended to be "narrow" and apply only to people "like Range." *Range*, 69 F.4th at 106.[1] Since that decision, numerous courts in the circuit have found § 922(g)(1) to be constitutional under various circumstances. *See Hedgepeth*, 2023 WL 7167138, at *4–9 (finding § 922(g)(1) constitutional when applied to a person who has "shown a proclivity toward violence and an inability to safely hold firearms," thereby denying both as-applied and facial challenges to the statute); *Boone*, 2024 WL 965146, at *4–8 (D.N.J. Mar. 6, 2024) (denying facial and as-applied challenge to § 922(g)(1) as "[c]onsidering the same historical analogues, courts in this circuit roundly agree that [§] 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation as applied to individuals, like Defendant, who have sustained prior felony convictions for drug trafficking"); *United States of America v. Divine Zion*, No. 22-527, 2024 WL 1975497, at

---

[1] To the extent the Ninth Circuit held § 922(g)(1) to be unconstitutional as applied in *United States v. Duarte*, that holding was based on the same narrow grounds as the Third Circuit decision in *Range*, in that the defendant's crimes (vandalism, felon in possession of a firearm, possession of a controlled substance, and two convictions for evading a peace officer) were not of sufficient severity to be analogous to historical reasons for felon disarmament. *United States v. Duarte*, No. 22-50048, 2024 WL 2068016, at *2, *24 (9th Cir. May 9, 2024) ("Based on this record, we cannot say that [defendant's] predicate offenses were, by Founding era standards, of a nature serious enough to justify permanently depriving him of his fundamental Second Amendment rights.").

8

*5–7 (D.N.J. May 3, 2024) (denying both facial and as-applied challenge to § 922(g)(1), noting that "Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional").

Accordingly, because numerous courts have found § 922(g)(1) to be constitutional when applied to diverse situations, Defendant's facial challenge to § 922(g)(1) is **DENIED**.

**B.  As-Applied Challenge**

Defendant primarily challenges the constitutionality of § 922(g)(1) as applied to his case. Here, Defendant's charge under § 922(g)(1) was based on prior criminal convictions for first degree armed robbery on October 7, 2003, felony possession of controlled substances (cocaine) on June 4, 2001, and engaging in terroristic threats of the third degree on May 7, 1999. (ECF No. 84 at 2–3.)

In the Third Circuit, courts engage in a two-step analysis of as-applied challenges using the Second Amendment. The Court will first decide whether the text of the Second Amendment "applies to a person and his proposed conduct." *Range*, 69 F.4th at 101. If the moving party makes this showing, the Government must then "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* (quoting *Bruen*, 597 U.S. at 19).

The Second Amendment protects Defendant as a "person," as it is well established in the Third Circuit that persons with a felony conviction continue to maintain Second Amendment rights. *See Range*, 69 F.4th at 101–03 (holding that felons possess Second Amendment rights, although such rights may be regulated or stripped from them); *United States v. Quailes*, No. 21-0176, 2023 WL 5401733, at *8 (M.D. Pa. Aug. 22, 2023) (holding that defendant possessed Second Amendment rights despite prior felony drug trafficking convictions); *Porter v. United*

9

*States*, Civ. A. No. 22-6199, 2023 WL 6366273, at *4 (D.N.J. Sept. 28, 2023) (holding the Second Amendment protected all Americans, not just law-abiding citizens). Accordingly, the Second Amendment protects Defendant as a person despite his prior felony convictions.

However, the Second Amendment does not cover Defendant's "conduct" in this case, given that his firearm was discovered in connection with drug trafficking. Courts in the Third Circuit examine whether a defendant's intentions in owning a firearm, or, in other words, the defendant's "conduct," comports with the conduct the Second Amendment is intended to protect. *Range*, 69 F.4th at 103 (holding the Second Amendment protects the conduct of owning firearms for hunting and self-defense). Courts in this circuit have held that the Second Amendment does not protect the possession of a gun in furtherance of criminal activity, such as drug trafficking. *See Jenkins*, 2023 WL 6534200, at *16 ("The question is, '[i]ndependent of [§] 922(g)(1), is the conduct itself "Second Amendment conduct"?' The answer to that question must be more specific than 'carrying a gun,' because . . . it is beyond dispute that at least some purposes for carrying a gun are not Second Amendment conduct."); *United States v. Adams*, No. 23-122, 2024 WL 54112, at *7 (M.D. Pa. Jan. 4, 2024) ("[T]he Second Amendment does not apply to the proposed use of firearms for criminal exploits, such as possessing firearms in furtherance of trafficking drugs."); *United States v. Eddings*, Civ. A. No. 21-117, 2023 WL 7194772, at *3 (W.D. Pa. Nov. 1, 2023) (holding the Second Amendment did not cover defendant's conduct as "[d]efendant's conduct of possessing a firearm and ammunition in a vehicle with drug paraphernalia, and while [d]efendant himself possessed drug paraphernalia, establishes [d]efendant as a person who is dangerous to the safety of the public and is disruptive to the orderly functioning of society"); *United States v. McBroom*, Civ. A. No. 21-97, 2023 WL 7221400, at *3 (W.D. Pa. Nov. 2, 2023) (same).

Here, Defendant's charge under § 922(g)(1) (possession of a firearm by a convicted felon) should be read in conjunction with his charge under § 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime). *See Adams*, 2024 WL 54112, at *7 ("[D]efendant is also charged with violating § 924(c), which implicates facts that defendant possessed firearms while drug trafficking. Those facts cannot be divorced from the analysis of § 922(g)(1) or from his charge under 21 U.S.C. § 841(a)(1) as defendant suggests."). Based on the information in the Indictment, the Court finds the Second Amendment does not protect Defendant's conduct of possessing a firearm because he was also charged with violating § 924(c), which, like the defendant in *Adams*, implicates facts that he possessed the firearm in connection with drug trafficking. *Adams*, 2024 WL 54112, at *7. Accordingly, Defendant's motion to dismiss should be denied on this basis alone.

Nonetheless, the Court acknowledges there is some ambiguity regarding Defendant's burden in proving protected conduct at the first stage of the *Bruen* analysis, with some courts finding conduct to be an irrelevant inquiry for § 922(g)(1), given that the statute "regulates possession based on felon status" rather than based on "unlawful purpose." *Divine Zion*, 2024 WL 1975497, at *5–7; *see also Quailes*, 2023 WL 5401733, at *8 ("The crux of the [§] 922(g)(1) charge is that the mere possession of a firearm is a criminal act due to the defendant's status as a convicted felon. Accordingly, there cannot be a requirement for the defendant to state his purpose for possessing the firearm."); *United States v. Harper*, No. 21-0236, 2023 WL 5672311, at *9 (M.D. Pa. Sept. 1, 2023) (holding that "[o]ther than to address a Second Amendment challenge, there is no reason to require a defendant accused of illegal possession of a firearm pursuant to [§] 922(g) to state his purpose for possessing the firearm" as "the circumstances surrounding the possession do not impact the elements of the offense"). Therefore, the Court will also consider the

11

second step of whether § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation as applied to Defendant's circumstances.

There are numerous examples of historical statutes, both in pre-revolutionary England and the United States, which authorized seizing firearms from persons deemed to be dangerous to the community. In comparing modern and historical firearm regulations, "whether [such] regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Bruen*, 597 U.S. at 29. Courts have noted a tradition of disarming dangerous individuals beginning in Seventh Century England, where a law banned providing arms to another in the case of "strife." *United States v. Smith*, No. 23-00008, 2023 WL 6795807, at *4 (W.D. Pa. Oct. 13, 2023) (citing Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 258 (2020)). This tradition continued into the Seventeenth Century, where the Militia Act of 1662 authorized the government to seize firearms from persons deemed "dangerous to the Peace of the Kingdom," a statute which continued after the right to bear arms was codified in the English Bill of Rights of 1689. *United States v. Hydock*, No. 23-205, 2023 WL 8810793, at *4 (E.D. Pa. Dec. 20, 2023) (citing Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 Notre Dame L. Rev. 397, 401, 405 (2019)). The American colonies and early republic enacted similar statutes authorizing disarmament from individuals deemed "disaffected and dangerous to the present Government." *Hydock*, 2023 WL 8810793, at *4 (citing Greenlee, 20 Wyo. L. Rev. at 264–65; *see also United States v. Ladson*, No. 23-161, 2023 WL 6810095, at *4 (E.D. Pa. Oct. 16, 2023). Examples of such laws include laws in Massachusetts and New Hampshire forbidding carrying arms "in an aggressive and terrifying manner," and a law in Virginia disarming those "who ride,

or go, offensively armed, in Terror of the People." *Smith*, 2023 WL 6795807, at *5 (citing Greenlee, 20 Wyo. L. Rev. at 262). By the mid-nineteenth century, "many jurisdictions required 'those threatening to do harm' to 'post bond before carrying weapons in public.'" *Hydock*, 2023 WL 8810793, at *4 (quoting *Bruen*, 597 U.S. at 55). Commentators in the nineteenth century argued that the government could properly restrict a person's right to bear arms where there is "just reason to fear that he purposes to make an unlawful use of them." *Hydock*, 2023 WL 8810793, at *4 (quoting *Bruen*, 597 U.S. at 56). Ultimately, "at the time of the ratification of the Second Amendment, alongside the several states' declarations of rights, the framers and the people understood that the right to keep and bear arms extended to all 'peaceable' citizens." *Smith*, 2023 WL 6795807, at *5 (citing Greenlee, 20 Wyo. L. Rev. at 266). Therefore, there is a historical tradition in this country of disarming individuals who are deemed threats to public order and peace.

Here, Defendant has previously been convicted of violent offenses including armed robbery and engaging in terroristic threats (ECF No. 84 at 2–3) and is presently accused of drug trafficking (ECF No. 1 at 2–3), making him the type of person who could be deemed a threat to the public order and peace and who historically would have been disarmed as such. Courts have frequently held that violent felonies such as armed robbery are consistent with historic reasons for disarmament. *See United States v. West*, No. 23-132, 2023 WL 8091984, at *4 (E.D. Pa. Nov. 21, 2023) (holding § 922(g)(1) "when applied to plainly dangerous felonies like armed robbery . . . disarms [defendant] for the same reasons that earlier governments disarmed people like him"); *United States v. Rooks*, No. 21-038, 2023 WL 8237257, at *6 (E.D. Pa. Nov. 28, 2023) ("[Defendant's] past crimes, including theft/fraud, controlled substance crimes, and gun-point armed robbery, demonstrate that, if armed, he poses a danger to society. Therefore, the prohibition of firearm possession by [defendant] passes constitutional muster as his case does not fit within

13

the narrow facts applicable in [the *Range*] case."); *see also United States v. Barwicks*, No. 20-00563, 2024 WL 1521473, at *14 (N.D. Ill. Apr. 8, 2024) ("[T]he Court agrees with the Government that [defendant's] criminal history, consisting of a conviction for armed robbery, supports a finding of dangerousness."). Here, Defendant's prior conviction of a violent felony establishes him as a danger to society who historically would have been disarmed. Past governments engaged in such measures at their discretion, and for varying lengths of time, to preserve the peace and security of the community, much as § 922(g)(1) does today. *Hydock*, 2023 WL 8810793, at *4 (citing O'Scannlain 95 Notre Dame L. Rev. at 401, 405). Accordingly, Defendant's motion to dismiss Count I of the Indictment is also denied because the Court finds § 922(g)(1) is constitutional as applied to him based on the statute being consistent with the nation's historical tradition of firearm regulation, which included disarming individuals who could be deemed a threat to the public order and peace.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 83) Count I of the Indictment (ECF No. 1) for being unconstitutional on its face and as applied to Defendant is **DENIED**. An appropriate Order follows.

Date: May 17, 2024  */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE